## TRINIDAD GONZALES *v.* THE STATE.

1. EVIDENCE — CHARGE OF THE COURT.— Where the inculpatory evidence is purely circumstantial, the charge of the court must expound to the jury the nature and conclusiveness of that character of testimony, to warrant a conviction upon it. It is a part of the law applicable to the case, and cannot be omitted from the charge without causing error fatal to the conviction.

2. EVIDENCE.— A written admission of certain facts voluntarily signed by the defendant, executed evidently to avoid a continuance by the State, with the knowledge that it would be relied upon by the State to prove the facts admitted, and which was not shown to have been made by the defendant ignorantly or through mistake, or that it had been obtained by improper means, was not a confession nor governed by the same rules as confessions, and was admissible in behalf of the State.

3. BURGLARY.— INDICTMENT charged the offense of burglary in two counts; the first count charging the offense to have been committed in the day-time, and the latter at night. *Held,* that the court erred in requiring the State to elect upon which count the defendant should be tried. See the opinion *in extenso* on the question.

APPEAL from the District Court of Atascosa. Tried below before the Hon. J. R. MASON, Special Judge.

· The indictment charged the burglary of the corn crib of J. W. Murphy, and the theft therefrom of two blankets. The defendant was convicted and was awarded a two years' term in the penitentiary as punishment.

J. W. Murphy testified for the State that he lived in the town of Pleasanton, Atascosa county, Texas. In November, 1879, C. C. Fountain, of Coleman county, was staying at the house of witness, and had a pair of

blankets with him, which lay upon the gallery of the house for several days. The witness saw them every day, and, though he took no particular notice of them, he observed that they were unlike any other blankets kept in the stores of Pleasanton, or owned by any one in the neighborhood. The witness saw these blankets on the evening of November 18th or 19th, in his crib, where he had placed them. The crib was supplied with a good door and latch. The witness noticed the blankets in the crib about dusk when he closed and latched the crib door. He was up early next morning and went out to his lot, but does not remember that he went into the crib. After breakfast, between 8 and 9 o'clock, the witness started to town, and after he had gone about 150 yards, he stepped from the road some five or six steps and squatted behind some brush. In a short time he heard some one coming down the road or path, and looked up and saw the defendant on horseback. The defendant could not see the witness. As the defendant passed, the witness saw that he had some blankets folded up in a careless manner and tied behind his saddle, and noticed that they very much resembled Fountain's blankets. The witness hastened to the crib and discovered that Fountain's blankets were gone. The witness then went on to town and informed Mr. Fountain, who, with Willie O'Brian, started in pursuit of the defendant. About 12 o'clock Fountain rode up to the livery stable with a pair of blankets thrown across his saddle. They were the same blankets which the witness had seen in the crib, and resembled those he had seen tied behind the defendant's saddle. The witness did not give the defendant any consent to go into the crib.

Cross-examined, the witness stated that the blankets stolen had a stripe unlike any in the Pleasanton stores, and were brought to his house by Fountain from Coleman City. The witness did not see the defendant about

or near his crib at any time during the day or night before he saw him with the blankets as stated in his examination in chief. He passed the witness's house two or three times on horseback the day before. The blankets were tied loosely behind the saddle, and appeared to have been tied hurriedly. The witness saw the defendant with the blankets ten or fifteen minutes after he left home, about 150 yards from the crib, but did not know whether he got them during the night or on that morning. When the witness left his crib the night before, it was latched, and he found it latched when he went back to look for the blankets next morning.

William O'Brian, for the State, testified that in November, 1879, he went with C. C. Fountain to the defendant's house in search of him and the blankets, but the defendant was not at home. At another house, near by, they found the defendant and told him they wanted the blankets he stole from Murphy's crib. The defendant denied the theft, but was told that denial was useless as Murphy had seen him with them. He still denied having taken them, and the witness and Fountain told him to "come on, we will take you to town anyhow." After going some distance with the defendant, Fountain told him he knew he had taken the blankets, and if he did not confess, and return them, he would kill him. Fountain threatened several times. Both he and the witness were armed with six-shooters. Upon a promise to spare his life, the defendant agreed to return the blankets, and escorted the witness and Fountain to a tree covered with grape vines, where he got the blankets and returned them to Fountain.

Cross-examined, the witness stated that the defendant did not show up the blankets until he was threatened several times with death.

The State then introduced the following written agreement:

"It is agreed that the following statement may be read

in evidence on the trial of the above stated case, to wit: that the blankets mentioned in the indictment in this case were the property of C. C. Fountain; that they were taken without his consent, and that they are the same blankets which were in J. W. Murphy's corn crib the night before.

"Nov. 14, 1881.                    Trinidad ⋈ Gonzales."
                                            his
                                            mark

J. A. & N. O. Green, for the appellant: The first ground of error is that the court erred in admitting in evidence the writing signed by the defendant, the said writing being an admission by the defendant of the ownership of the blankets and the want of consent of C. C. Fountain, the alleged owner, because the admission was not understood by or explained to the defendant, nor was he admonished as to the consequences of his signing.

The confession (if it can be so termed) was made whilst the party was in confinement and in the custody of an officer, and was not taken as the voluntary statement of the accused before an examining court, nor was he admonished as to the consequences of his act. This case was tried November 19, 1880. It seems that on the trial of this cause a paper was read in evidence which purports to have been written November 14, 1881, signed Trinidad Gonzales, his mark. No proof of the signature to said paper by defendant was made, except as it may be inferentially gathered from the bill of exceptions. Yet, over the objection of the defendant, the paper was read to the jury.

Objection was made at the time of introduction, because the statement was not understood by defendant, he not being able to speak or read the English language, and because not done in open court, and defendant had not been admonished as to the consequences of signing the agreement. Revised Code Crim. Proc. arts. 749, 750;

*Green* v. *State*, 31 Texas, 130; *Cain* v. *State*, 18 Texas, 190.

If the memorandum is to be taken as an agreement, then it is wanting in mutuality, as no one signed it except the defendant, and it is not affirmatively shown that the defendant understood what was the effect or consequence of his act.

Considering the error in the admission of such testimony, we call the attention of the court to the fact that, without the confession aforesaid, there was no testimony to show the property to have been that of C. C. Fountain, as alleged in the indictment, nor that it was taken without the consent of the owner, nor that it was the same property which was in the corn crib. Without this, no conviction could have been had, and it can be said here, as was said by the court in *Green* v. *State, supra:* "It is unnecessary to discuss the sufficiency of the evidence apart from the confession to justify the finding of the jury. This is not the question. What we are to determine is, whether testimony was admitted contrary to law, upon which, in whole or in part, the jury may have based their verdict." That the evidence admitted had material bearing upon the minds of the jury cannot be doubted.

The court, on the question of circumstantial evidence, failed to give the jury the legal principle that the facts proven must be consistent with each other and with the main fact, and that each must be established by evidence as cogent as if it were the main fact.

In respect to circumstantial evidence the whole theory of the State, so far as the breaking and entering of the crib is concerned, whether it was in the day or night, the intention of defendant to steal, and the theft by the defendant, are all based upon circumstantial evidence, and without respect to the entering with intent to steal and taking, there is no evidence whatever that the de-

fendant committed the breaking or theft, or that it occurred in the night. The evidence is nearly conclusive that the blankets were taken in the day, after Murphy first went to feed his horse in the morning. The *corpus delicti*, as shown by the indictment, is *burglary* in the *night*, not burglary alone; and there must be clear and unequivocal proof of the *corpus delicti*. Burrill on Circumstantial Ev. 734 and note (a).

The prisoner is on his trial only upon the charge of burglary by night, and the court should have charged not only a definition of burglary by night, but should have charged that the ingredients of the offense, when sought to be proved by circumstantial evidence, must be shown by such circumstances as are consistent with each other and the main fact, and each fact must be established by evidence as cogent as if it were the main fact.

*H. Chilton,* Assistant Attorney General, for the State.

WILLSON, J. On a former day of the present term of this court the judgment of the court below, rendered in this case, was affirmed. The defendant having submitted a motion for rehearing, accompanied by briefs, we have given the record and the questions presented by defendant's counsel a careful examination and full consideration, and we now conclude that we erred in affirming the judgment of the court below, and that the defendant's motion for rehearing should be granted, and the judgment reversed and cause remanded for a new trial.

We find but a single error in the proceedings of which defendant can justly complain. The evidence against him was entirely circumstantial. It is well settled that when the inculpatory evidence in a case is purely circumstantial, the charge of the court must expound to the jury the nature and conclusiveness of that character of testimony, to warrant a conviction upon it. It is a part

·of the law applicable to the case, and cannot be omitted from the charge without causing error fatal to the conviction. *(Hunt* v. *State,* 7 Texas Ct. App. 212; *Struckman* v. *State,* Id. 581; *Cave* v. *State,* 41 Texas, 182; *Burrill* v. *State,* 18 Texas, 713.) In this case the court wholly failed to instruct the jury in regard to circumstantial evidence, which error was properly complained ·of by defendant in a bill of exceptions, and also in his motion for a new trial.

The written admission of certain facts, which had been signed by the defendant, and which was read in evidence ·on the trial, was not a confession, and was not governed by the same rules as to its admissibility. It was his own voluntary act, executed, no doubt, for the purpose of avoiding a continuance of the case by the State, on account of the absence of a material witness. It was not shown that it had been made by him ignorantly, or through mistake, nor that it had been obtained from him by any improper means. He went to trial knowing that the State would rely upon this instrument to prove the material facts therein admitted by him. We think the paper was clearly admissible.

The offense of burglary was charged against the defendant in two counts; the first count charged burglary. in the day time, and the second count charged it in the night time. Before the trial of the case commenced the ·court required the district attorney to elect which of these counts he would proceed to try the defendant upon, .and he elected to proceed upon the second count. In this we think the court erred. An indictment may contain as many counts, charging the same offense, as the .attorney who prepares it may think necessary to insert. (Code Crim. Proc. art. 433.) "A good pleader will insert as many counts in an indictment as he believes are necessary to provide for every possible contingency in the evidence." *(Dill* v. *State,* 1 Texas Ct. App. 278.)

Where several counts are introduced in an indictment. solely for the purpose of meeting the evidence as it may transpire, the charges being substantially for the same offense, as in this case, the State cannot properly be re-- quired to elect. (1 Whart. Am. Cr. Law, 416; *Dill* v.. *State*, 1 Texas Ct. App. 278; *Weathersby* v. *State*, Id.. 643; *Dalton* v. *State*, 4 Texas Ct. App. 333; *Irving* v.. *State*, 8 Texas Ct. App. 46.)

The offense charged in each of the counts in this in- dictment is the same; the only difference being that one count charges it to have been committed in the day time and the other that it was committed in the night time. The utility of several counts is strongly illustrated in this. case. The evidence made it uncertain whether the burg- lary was committed in the day time or in the night time. By having two counts in the indictment, this uncertainty in the evidence was entirely obviated, for it would make no difference whether the offense was proved to have been in daylight or in the night, it would be covered by one or the other of the counts. But, if the State can be compelled to elect in such cases, and proceed to trial upon only one count, this would completely destroy the utility and purpose of several counts, and render them alto- gether worthless. We thought it proper to call attention to this error of the court, that it might not be persisted in on another trial of this case.

Because of the omission of the court to charge the jury the law relating to circumstantial evidence, the judgment of the court below is reversed and the cause remanded for a new trial.

*Reversed and remanded.*